**Eligha GRAHAM, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner, Social Security Administration, Defendant.**

**No. Civ. 98–1264–FR.**

United States District Court, D. Oregon.

May 20, 1999.

David B. Lowry, Portland, OR, for plaintiff.

Kristine Olson, United States Attorney, William W. Youngman, Assistant United States Attorney, Portland, OR, Richard H. Wetmore, Special Assistant United States Attorney, Seattle, Washington, for defendant.

## OPINION

FRYE, District Judge.

The plaintiff, Eligha Graham, brings this action pursuant to section 205(g) of the Social Security Act (the Act), as amended, 42 U.S.C. § 405(g), to obtain judicial review of the decision of the Commissioner of Social Security (the Commissioner) denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433.

## BACKGROUND

Eligha Graham filed an application for a period of disability on February 16, 1995, alleging that the date of the onset of his disability was April 15, 1977 due to a deteriorating disc in his back which results in

severe pain and limitations upon his ability to walk. The date that he was last insured was December 31, 1982. His application was denied initially and upon reconsideration.

After a timely request for a hearing, Graham, represented by counsel, appeared and testified before an Administrative Law Judge (ALJ) on September 18, 1996, as did his mother, Bernice Golsby; his wife, Gloria Graham; and a vocational expert. On January 28, 1997, the ALJ issued a decision finding that Graham was not disabled within the meaning of the Act because he retained the residual functional capacity to perform a full range of light level work.

On September 27, 1998, the Appeals Council denied Graham's request for review, making the decision of the ALJ the final agency action. 20 C.F.R. § 404.981 (1998).

## FACTS

Eligha Graham was born on August 11, 1944. He has completed eight years of schooling. He last worked in 1979. His past relevant work was as a pipe patcher and an off-bearer. Graham currently receives a longshoreman's disability pension, which relates to an injury he suffered in 1979.

Eligha Graham testified that he stopped working in 1979 because of deteriorating discs in his back which caused reduced strength in his arms and legs. Graham testified that his legs would just "give out" while he was walking. TR 38–39. Graham testified that he spends some days visiting people and some days fishing where he can fish while sitting, standing or lying down; that he watches television four to five hours each day while sitting in his easy chair; that he takes frequent rest breaks throughout the day; and that he spends four to five hours a day lying down or reclining.

Graham testified that since the 1970's, he has had muscle cramps in his legs two or three times a week, and that this muscle cramping lasts up to three hours and causes his legs to lock up. Graham testified that he experienced severe headaches from the 1970's until five years prior to the hearing. Graham testified that he suffered from depression in the late 1970's and early 1980's when his back and legs interfered with his ability to work. Graham testified that in the late 1970's and early 1990's, he could not stand all day; that he could walk about half of a city block; and that he could sit for a couple of hours at a time.

Bernice Goldsby, Graham's mother, testified that in the late 1970's and early 1980's, her son was very sick with back and leg pain; that he had headaches and difficulty in walking; and that he would become upset and irritable, and he would stay in bed when depressed. Gloria Graham, Graham's wife, also testified that in the late 1970's and early 1980's, Graham was bent over and walked very slowly; that he was bothered by pain 50% of the time; and that he easily became fatigued. She said that he was very depressed and very irritable.

A vocational expert testified at the administrative hearing that Graham would not be able to perform the duties of his past heavy, unskilled work as a pipe patcher and off-bearer, but that he would be able to perform sedentary and light work with the limitations described, as well as a majority of medium heavy, unskilled work. The vocational expert further testified that Graham would not be able to perform any jobs with the limitations that he described.

In a medical report prepared in May of 1977, Dr. Thomas L. Gritzka indicated that Graham injured his back in a lifting accident at work. TR 147. In August of 1977, Dr. Gritzka diagnosed Graham with "acute lumbosacral pain." TR 169–170. In October of 1978, Graham received an epidural injection for continuing lumbosacral pain. Graham showed a great deal of improvement but needed another epidural injection in November of 1978. TR 183–85.

In April of 1981, Graham was admitted to the hospital and treated by Dr. Gritzka for recurrent lower back pain and chest

and upper abdominal pain. In April of 1983, September of 1984, and February of 1987, Graham was admitted to the hospital and treated by Dr. Gritzka for recurrent low back pain.

On January 28, 1997, the ALJ issued a decision finding 1) that Graham's impairments as of December 31, 1982 preclude Graham from performing his past relevant work as a sand blaster, a pipe patcher, and an off-bearer in the shingle industry; and 2) that Graham was not disabled under the Act as of December 31, 1982 because he was able to perform sedentary and light work. The ALJ further found that Graham's presentation of his condition as of December 31, 1982 was not a credible indication of the actual level of pain or discomfort that he suffered as a result of his back strain. TR 20–21.

On April 20, 1997, Dr. Gritzka wrote a letter at the request of Graham's attorney which was then submitted to the Appeals Council following the decision of the ALJ. Dr. Gritzka had reviewed the medical records pertaining to Graham's condition prior to 1983. Dr. Gritzka indicated that even prior to 1983, Graham had pain, muscle spasms, and significant limitation of motion in his spine. Dr. Gritzka concluded:

> Prior to 1973[sic], during the time I was treating Mr. Graham, I think he was capable of work on a reasonably continuous basis in the light/medium category of occupational titles. As you know, the claimant was employed in a shipyard during that time, and was unable to work on a regular basis. He would return to work at heavy labor, reinjure his back and be off work for a while, make some recovery, and then return to work, only to be reinjured again. This scenario went on until the claimant was finally retired with a pension from the shipyard.
>
> In summary, although Mr. Graham was significantly impaired with regard to his ability to perform his usual and custom-

ary work prior to 1983, he was not disabled for generic work.

TR 8.

On September 27, 1998, the Appeals Council denied Graham's request for review.

## CONTENTIONS OF THE PARTIES

Eligha Graham contends that the ALJ erred in the following ways: 1) he totally disregarded the testimony of Graham's wife and of Graham's mother; 2) he rejected Graham's testimony without providing clear and convincing reasons for doing so; 3) he failed to order a psychological examination; and 4) he applied the medical-vocational guidelines to find that Graham was capable of performing light duty work.

The Commissioner concedes that the ALJ was required to discuss the testimony of Graham's mother and of Graham's wife, and that the application of the medical-vocational guidelines was procedurally improper. The Commissioner contends that the court should remand this case to the Commissioner for further development of the record.

Graham contends that the court should remand this case for an award of benefits. Graham contends that the court should rely on his testimony as to his condition in the late 1970's and early 1980's and order the Commissioner to pay him benefits.

## STANDARD OF REVIEW

In *Smolen v. Chater,* 80 F.3d 1273 (9th Cir.1996), the court stated:

> We have discretion to remand a case either for additional evidence and findings or to award benefits. We may direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose.
>
> In the past, we have credited evidence and remanded for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstand-

ing issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* at 1292 (citations omitted).

### RULING OF THE COURT

■ The ALJ set forth clear and convincing reasons for rejecting Graham's testimony. Therefore, the court will not remand this case for an award of benefits based solely upon the testimony of Graham at the hearing. While the Commissioner concedes that it was procedurally improper for the ALJ to rely upon the medical-vocational guidelines instead of the testimony of the vocational expert to support the Commissioner's conclusion that Graham could have performed a full range of light work as of December 31, 1982, there is evidence in the record to support this conclusion. In his letter, Dr. Gritzka, who treated Graham prior to and after December 31, 1982, states that Graham was "capable of work on a reasonably continuous basis in the light/medium category." TR 8. The court concludes that there are outstanding issues that must be resolved by the Commissioner before a determination can be made as to Graham's alleged disability.

The decision of the Commissioner is reversed and remanded for further proceedings pursuant to 42 U.S.C. § 405(g). The ALJ upon remand should order a psychological examination or state clearly in the record why such an examination was not ordered.